## Harvey's Estate. No. 2

Before Van Dusen, P. J., and Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*John Mulford*, of *Drinker, Biddle & Reath*, for exceptants.

*Philip A. Bregy*, of *MacCoy, Brittain, Evans & Lewis*, and *George B. Clothier*, of *Edmonds, Obermayer & Rebmann*, contra.

*W. Horace Hepburn, Jr.*, for executors.

BOLGER, J., January 7, 1944.—This court having previously decided against exceptants' contention that the Pennsylvania Apportionment Act of July 2, 1937, P. L. 2762, is unconstitutional and has no application to this case (Harvey's Estate, 47 D. & C. 12), we are now asked in exceptions to the supplemental schedule of distribution to decide that in the allocation of the Federal estate tax under that act specific and residuary charitable beneficiaries should be required to pay aliquot shares of the Federal estate tax.

This tax is assessed by the Internal Revenue Code upon the transfer of the net estate of every decedent. Net estate is determined in section 812 by deducting from the value of the gross estate (*a*) an exemption

of $100,000 (as of 1939) ; (b) expenses, losses, indebtedness, and taxes; (c) property previously taxed; and (d) transfers for public, charitable, and religious uses. In Riggs v. Del Drago et al., 317 U. S. 95 (1943), it was held that the Federal estate tax is assessed against the estate as a whole and not any particular legacy; that Congress intended to leave to the several States the determination of what interests in the estate should bear the burden of the tax. The relevant portion of the Pennsylvania Apportionment Act is section 48.1(a), which accomplishes this mission in this State and which is identical with the New York act. It provides as follows:

"Whenever . . . an executor . . . has paid an estate tax . . . upon or with respect to any property required to be included in the gross estate of a decedent . . . the amount of the tax so paid . . . shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues. Such proration shall be made . . . in the proportion . . . that the value of the property, interest or benefit of each such person bears to the total value of the property, interests, and benefits received by all such persons interested in the estate, except that, in making such proration, allowances shall be made for any exemptions granted by the act imposing the tax, and for any deductions allowed by such act, for the purpose of arriving at the value of the net estate, and except that, in cases where a trust is created or other provision made whereby any person is given an interest in income or an estate for years or for life . . . the tax on both such temporary interest and on the remainder thereafter shall be charged against and be paid out of the corpus of such property . . . without apportionment between remainders and temporary estates. . . . The term 'persons interested in the estate' shall . . . include all persons who may be entitled to receive . . .

any property or interest which is required to be included in the gross estate of a decedent . . ."

Exceptants maintain that two phrases of this act clearly require the charitable legatees to pay aliquot shares of the tax. They are as follows:

". . . the amount of the tax so paid . . . shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues. Such proration shall be made . . . in the proportion . . . that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate . . ."; and the phrase:

"The term 'persons interested in the estate' shall . . . include all persons who may be entitled to receive . . . any property or interest which is required to be included in the gross estate . . ."

It is further argued that "deductions" in the Pennsylvania Apportionment Act refers only to the deduction allowed by the Federal act for debts and administration expenses, and that any other construction would disregard the other terms of the act; that the word "deductions" has a different connotation than that used in the Federal Revenue Act because in the accountant's calculations computing the tax they did not initially deduct the $100,000 exemption from the denominator of the fraction constituting the rate of apportionment. Parenthetically it can be stated that the $100,000 exemption is absorbed elsewhere in the calculation of the tax.

We consider that Wilkinson's Estate, 37 D. & C. 243, governs this case. There we refused to include charitable pecuniary legatees in the apportionment of the Federal estate tax. We find no controlling distinction in the fact that some of the charities in this case are residuary legatees, while in the cited case they wer

pecuniary in character. Judge Klein said (p. 246), referring to the Act of 1937, supra:

". . . this language indicates an intention on the part of the legislature to recognize and exempt from the operation of the act all exemptions granted by the Federal act imposing the tax."

The determination of the case depends upon the interpretation of the following phrase of the Pennsylvania act, supra:

". . . except that, in making such proration, allowances shall be made for any exemptions granted by the act imposing the tax, and for any deductions allowed by such act, for the purpose of arriving at the value of the net estate . . ."

Were this phrase omitted from the act, exceptants' case would be definitely established. However, it is as much a part of the act as the phrases relied upon by exceptants, and therefore must be, with them, given a reasonable interpretation: section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV; Lindenmuth v. Commonwealth (No. 1), 312 Pa. 350. The subject matter of the critical phrase is "in making such proration". It is our opinion that the only possible reasonable construction exempts the charitable benefactions from any responsibility for the payment of the tax. Exceptants' theory would lead to a meaningless or, at best, a grossly distorted interpretation. Literally the section incorporates into itself by reference all of the four deductions and exemptions of the Internal Revenue Code insofar as they are applicable.

One of the main considerations in construing an act of assembly is its purpose: section 51 of the Statutory Construction Act, supra. In determining the purpose of this act we must refer also to the Internal Revenue Act which it was enacted to execute and to whose terms it refers and partly adopts. Given this setting, it is unquestionable that the purpose of the Pennsylvania

act is equitably to apportion the burden of the tax. Therefore, in our opinion the application of the equitable doctrine of contribution demands that the tax be borne commensurately by those whose gifts contribute to the tax burden and conversely that there be eliminated from such burden all whose legacies do not in any way create or add to the tax. This is best illustrated by supposing the case of an estate wherein everything is bequeathed to public, charitable, or religious purposes. In such case, under the Revenue Act, to the extent that the charity actually receives the money it is exempt from Federal tax. On the other hand, in an estate where there are no such gifts, all of the legacies pay proportionately, because they all contribute to the burden of the tax. The act lacks an express direction to "thrust" any of the tax upon the charities and, therefore, we cannot conceive that the Pennsylvania legislature intended to violate the spirit of the Federal act, whose provisions allowing the deductions of the charitable legacies are practically written into the Pennsylvania act.

Superficially, it might appear that this exemption results in an imposition upon exceptants. In fact, exceptants complain that their shares of the taxes are increased approximately six percent, from 14.340 percent to 20.841 percent, because of the exemption to the charities. Actually the reverse is true. Exceptants after being primarily benefited by the existence of the charitable legacy are, in effect, trying to shunt part of their liability from themselves onto the charitable legatees. The deduction of the amount of the value of the charitable legacies from the gross estate results in a saving to all the other beneficiaries of the estate of approximately 10 percent. If testator had bequeathed the amount of the charitable gifts for noncharitable purposes, the net taxable estate would have been approximately $700,000 greater and the other beneficiaries would have had to pay a tax of approximately

31 percent as against 20.841 percent under the present setup. In spite of this windfall to them, exceptants want their share reduced to 14.340 percent by insisting that the charities bear the difference of 6.501 percent. This effort is thoroughly devoid of merit. We refuse to attribute to the legislature such an unjust purpose.

Finally, although charitable gifts are not generally exempt from the Pennsylvania transfer inheritance tax, nevertheless, they are favorites of our law.

Other authorities outside the jurisdiction, all of which reach similar conclusions, are cited in the opinion of the hearing judge.

The exceptions are dismissed. The action of the hearing judge in approving the supplemental schedule of distribution is confirmed.