## Bryn Mawr Trust Company v. Skelton

*Russell J. Brownback,* for plaintiff.
*Walter R. Faries,* for defendant.

KNIGHT, P. J., May 24, 1940.—Plaintiff held a bond and mortgage signed by defendant in the sum of $14,000. Plaintiff entered judgment on the bond, and began a foreclosure proceeding on the accompanying mortgage. The real estate secured by the bond and mortgage was sold by virtue of the foreclosure proceeding, and purchased by plaintiff. It was subsequently sold by plaintiff at an actual loss of $13,452.35.

Subsequent to the sheriff's sale, defendant presented a petition under the Deficiency Judgments Act of January 17, 1934, P. L. 243, upon which a rule was allowed to show cause why the judgments should not be marked satisfied by virtue of the provisions of the above act.

Upon this petition and the rule granted thereon, the court made the following decree:

"And now, this 17th day of May, 1935, the rule is made absolute and it is hereby ordered and decreed that the Prothonotary of the Court of Common Pleas of Montgomery County shall forthwith satisfy of record the following judgments outstanding against Joseph J. Skelton, Jr.:

(a) Judgment of $17,488.34 indexed in Judgment Docket X-4 page 584.

(b) Judgment for fourteen thousand dollars, etc., standing against Joseph J. Skelton, Jr., and indexed in Judgment Docket X-4 page 382.

And that said satisfaction shall have the effect of terminating the liability of all persons bound by any obligation securing the payment of a mortgage debt evidenced by mortgage recorded in Mortgage Book 1155, page 425, etc.                    Harold G. Knight, J."

The constitutionality of the Deficiency Judgments Act of 1934, supra, was not questioned in the above proceeding, but later the act was declared unconstitutional. See Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483 (1936).

The prothonotary did not comply with the order of the court, and the judgments remain unsatisfied. This rule

was then taken, to show cause why the above order should not be complied with, and the judgments satisfied. An answer was filed, and the case argued before the court en banc.

We are not officially informed of the reason advanced by the prothonotary for neglecting or refusing to comply with the directions of the court, as to the satisfaction of the judgments. The constitutionality of the act was not raised in this proceeding, and the presumption was that it was a constitutional piece of legislation. However, we are faced with an actual situation, and no matter what may have been the reasons of the prothonotary for not satisfying the judgments, the fact remains that they are not satisfied.

It seems apparent that petitioner has not adopted the right remedy; he should have obtained a writ of mandamus. We will not decide the case on this question of procedure, but will discuss the merits.

In 11 Am. Jur. 827 §148, it is stated:

"The general rule is that an unconstitutional statute, though having the form and name of law, is in reality no law, but is wholly void, and in legal contemplation is as inoperative as if it had never been passed. Such a statute leaves the question that it purports to settle just as it would be had the statute not been enacted. Moreover, a construction of a statute which brings it in conflict with the Constitution will nullify it as effectually as if it had, in express terms, been enacted in conflict therewith.

"Since an unconstitutional law is void, the general principles follow that it imposes no duties, confers no rights, creates no office, bestows no power or authority on anyone, affords no protection, and justifies no acts performed under it. No one is bound to obey an unconstitutional law and no courts are bound to enforce it because only the valid legislative intent becomes the law to be enforced by the courts."

Some exceptions have been made to this general rule, one of which appears in the recent case of City Deposit

Bank & Trust Co. v. Zoppa, 336 Pa. 379 (1939), the case relied upon by petitioner.

In that case, the facts were similar to those of the case at bar. There the judgment was marked satisfied under the provisions of the Deficiency Judgments Act of July 1, 1935, P. L. 503. When that act was declared unconstitutional a petition was presented to strike off the satisfaction. It was shown that it would be inequitable to strike off the satisfaction which had been entered more than two years before plaintiff filed its petition, and that to do so would prejudice defendant in other properties which defendant owned, and on which the judgment would become a lien.

The court cited cases showing that effect will be given to judicial acts done pursuant to a statute subsequently declared unconstitutional in other proceedings when equitable considerations require it for the purpose of doing justice in the circumstances of the given case. In the Zoppa case, the lower court refused to strike off the satisfaction, and the Supreme Court held that this was no abuse of discretion.

In the present case, petitioner shows no equitable considerations that should move the court to order the judgments satisfied; indeed the equities are against him, for the answer shows that plaintiff in the judgment suffered a loss on the sale of the real estate.

It can also be pointed out that, in the Zoppa case, petitioner sought to set aside something done and accomplished by virtue of an unconstitutional statute, while in the present case petitioner asks us to order something done pursuant to the terms of an unconstitutional act.

It may be urged that the satisfaction of the judgments was a purely ministerial act, and that the judgments should be considered satisfied, because it was the duty of the prothonotary to satisfy them, but this would be inequitable to plaintiff in the judgments, who would thus be deprived of taking advantage of the Act of March 24, 1937, P. L. 112.

After giving the matter due consideration, we are of the opinion that the rule should be discharged.

And now, May 24, 1940, the rule is discharged.